181051 Victor Alvarez-Mauras v. Banco Popular of Puerto Rico May I please the court, this is Paul Villaronelles, attorney for Plaintiffs and Apparel and Victor Alvarez-Mauras. The reason that we're here is that we're requesting that this honorable court revoke the case decided by the magistrate because he erred in at least three items. First of all, the district court made a legal error in his ruling regarding knowledge of the occurrence of the injury, which was not properly equipped to do as the finding of knowledge is almost always a jury question. And more than that also, this honorable judge, in his own opinion and order, correctly concluded that the Rico statute of limitations is four years since the plaintiff has no notice of the injury. That's not in dispute. However, that four-year statute of limitation, which was decided by the United States Supreme Court and agency holding court, can be told also by jurisprudence of this first circuit. And that's exactly what happened here because as the case law indicates, the tolling was done because in the facts of this case, the wrongful concealment of his actions by the appellant Banco Popular and Popular Securities, which prevented on Victor discovery of the cause of actions within the statutory period. This case turns on chronology, so if you could train in on one point. As I read the briefs in the record, on January 12 of year 2012, which is four years and nine months before the filing of the suit, your client filed a claim in FINRA stating that the bank initiated an internal investigation that erroneously concluded that the initial amount invested was $600,000 rather than $1,075,000. And there is $475,000 unaccounted for. So doesn't that, in your client's own words, make clear that by January 12, 2012, he knew that the bank was claiming he put in almost half a million less than he knows he put in? Okay. Why did that start the statute? Okay. You're right, but you're right in the fact that the plaintiff knew that he had an injury. But the case law requires that he needs to know the cause of the injury. And when he filed the claim through another attorney with FINRA on January 19, 2012, it was for unsuitable claims, unsuitable investments. It had nothing to do with the recall claim. He didn't know. The honest-to-goodness truth is that the plaintiff did not know of the fraudulent acts committed by the defendants until the expert report was made available in February 20, 2013. So I think what you're saying is if I hand a million dollars to a bank and then I go back the next day and the bank tells me, you only gave us $600,000, and I know I gave them a million, I don't have a claim? No. Of course you have a claim. If you knew the cause, the allegation was that – I don't need – why do I need to know why they're falsely claiming that I only gave them $600,000? I know that I've got a red-hot dispute with them over $400,000. But the situation was that it wasn't precisely the facts of the case, Your Honor Cavazza. It didn't exactly concur the way that you're describing. It was that he noticed that he's a non-sophisticated investor. He noticed a disminution in his account. He doesn't know all of those statements, and he asked the broker, Alexander Garcia, why has the account decreased? And he was told that it was due to market fluctuations, that he will get his $1 million investment. When he invested that amount, $175,000 – But that's not – by January of 2012, he wasn't saying that. He was – the plaintiff himself was saying that the bank had told him that he only put in $600,000 in the first place. And then he told him that it was unaccounted for, that we indicate that it's quite different from the concealment that was done by the defendants in this case. They did two fraudulent investigations, one in 2009 and the other in 2011. And he trusted. He even wrote a letter to the CEO and Banco Popular chairman, Richard Carrion, before having the expert report in May 15, 2012, indicating, you know, I have requested an investigation and something's going on. He had faith, even at that date, that Banco Popular would have done the right thing and given his money. But they didn't. So that's why the assistant attorney filed the claim, we think, on January 19, 2012. Then, for reasons that we're not going to address at this time, the difference between the attorney and the client, he hired this attorney in October of 2012 and he indicated the facts of the case that there was some unaccounted money. And still he didn't know that because it was concealed purposely by Banco Popular, all the way up to the highest hierarchy by Mr. Richard Carrion. And then I requested an expert report because they have never produced a microfilm or the cancelled checks of the four fraudulent transfers. When they produced the three transfers that the unopposed expert witnesses concluded was fraudulent, that's at the time that the plaintiff knew of the cause of action. And that's what the RICO claim initiated in February 20, 2013. And the four-year statute of limitations begins, therefore, on that date. If you add four years, that will be February 2017. And the plaintiff, Aplin, presented his claim in October 20, 2016, consequently within the time period. All this was done because the defendants concealed the actions of the plaintiffs, which prevented plaintiffs' discovery of their cause of action within the statutory period and the due diligence on the part of the plaintiff. I think what Judge Quezada is trying to ask you to do for us is, at the point when the bank's excuse went from market fluctuation to, no, you only put in $600,000, isn't that the point at which he knew he was injured? Well, he knew. For me, I will do not dispute that well within four years prior to the filing, he knew, the plaintiff knew that he had an injury. That is not in dispute. But he didn't know the cause of the injury. He knew the cause of the injury on February 20, 2013, when the expert witness report was filed that indicated that the reason that he was not unaccounted for, it was embezzled, it was stolen. And then that's why the 40-year statute of limitations began to rank on February 20, 2013, and not before, which he knew. But it's also, no, he has an injury and knows the cause of the injury. Again, I raised it at the cause of the injury. But he knew the cause of the injury couldn't have been market fluctuation, at the point he was told he only put in $600,000. That's the problem you're having. No, but he was told that, as the other judge Kavada indicated. That was in the 2009 report. It indicated that it was $600,000. You asked to borrow my car and say you just need it for an hour to go to the store and back. So I give you the keys and you drive off in the car. I don't see you again for a week. I can't find you and I complain. And you tell me, you never loaned me the car. It never happened. I know I gave you the car. I've got a, my statute of limitations, I think, has started running then if I want to sue you. Even though I don't know why you're not bringing me back the car, I know that I gave you the car and you're now claiming that I didn't. So I've got an injury. I know you're the guy who's responsible in some way for the injury, but I don't know how. Yeah, but that wasn't precisely the case. It's not that sequential. It was many years went through. So four years go by and I still, before you finally tell me, but once you tell me that I never loaned you the car and I know I did, I've got a lawsuit against you. This happens, you know, that he didn't have, he didn't deposit a million dollars, which again the records show that it's unopposed, that he invested $875,000 in December 17, 1998 when he opened the account, and another $125,000 in January 15, 1999 for a total of a million. He was told all along, he was never told in the way that an analogy that the owner makes, the other day that he wasn't told in that time that he only deposited $600,000. That came out when the plaintiff goes to Popola and asks for his millions, as he was told all along. He was told you're going to get a million dollars in 10 years after you deposited the amount, and he believed him. He trusted. So when the 10 years coincided with his retirement, which was his plan, he deposited this money when he was 55 years old, and then at 65, 10 years after his investment, he came to collect his million dollars. At that time, only at that time he was told that he only initiated the amount, the investment of $600,000 instead of a million, and then he requests another investigation. That was in 2009, January 2009. Then Banco Popular does another fraudulent investigation that takes two years, and they did it in February 2011, and they didn't even mention in those two investigations the four transfers that supposedly were made by the plaintiff. All right. Thank you. Okay. Thank you. Your time is up. Okay. Thank you. Good morning. May it please the Court, Sarah Velez, on behalf of Defendant Appellees. On appeal, plaintiff assigns error to the district court's dismissal of the complaint against the defendants. With respect to individual defendants, Mr. Garcia, the popular securities broker, his wife, and the conjugal partnership, it is undisputed that the district court properly dismissed the complaint. It is undisputed that the claims asserted in the complaint against Mr. Garcia, his wife and the conjugal partnership, are covered by a valid arbitration agreement that is not in question in this case nor in the appeal. And this is consistent with the well-established principle that arbitration agreements are vigorously enforced as a matter of strong policy. Indeed, at pages 5 and 11 of his brief, the appellant has conceded that those claims must be pursued in arbitration, and for said reason, he did not even address that issue in his reply brief, once again confirming his concession. As such, we request this honorable court to affirm the dismissal on those grounds. Second, not only has the appellant conceded that the claims against Mr. Garcia are arbitrable, but he also conceded in the complaint that those claims, and actually during his presentation here today, that those claims were presented, vigorously litigated, and decided by means of a final and binding arbitration agreement issued by FINRA in the action he filed in January 12, 2012. That action was filed against Popular Securities, and it includes Mr. Garcia as broker for Popular Securities. Isn't there a photograph of his initial deposit somewhere? I'm sorry? Isn't there a photograph of his initial deposit somewhere? There should have been as part of the proceeding in the arbitration award. But in this case, why didn't the bank just file, here's his $600,000 check? In this case, we argued that that issue has been litigated as part of the arbitration proceeding, so we only focused on legal arguments as to why the RICO claim, which is the one that he pretends to litigate in this case, which our position is that has already been litigated because it's the same issue, same facts, and same injury that he already presented in FINRA. And that's why part of our motion to dismiss in the district court is that this is collateral estoppel because he already had his day in court and he already litigated that claim. I'm sorry, I'm exceeding for a little bit. That doesn't mean we don't want an answer to Judge Quijada's question. Where's the check? Well, I don't have the check right now, but it's evidence that should have been presented and was considered as part of the arbitration proceeding. Are you familiar with what happened in the arbitration proceeding? We did not handle the arbitration proceeding for public securities. So you don't know if the check ever surfaced? We don't have that information right now. But we do believe that there was evidence presented during the arbitration proceeding that showed that how the monies could have been used by Mr. Alvarez-Mauraz after he deposited those. We'll hear from Mr. Mendez. Yes. Thank you. Good morning, Your Honors. May it please the Court, Nestor Mendez on behalf of Banco Popular and Mr. Alexander Garcia. I think the appellant has made things pretty easy today by admitting that he already had done so in his reply brief, that he knew of his injury before he filed his FIMRA claim in January 2012. So without admission, if this Court supply the injury discovery rule of this circuit, as explained in the Laris case and borrowing language from Rotela, the discovery of the injury, which he admits he knew of, starts the clock running. It's not, as this Court said, citing from Rotela, the discovery of the other elements of a claim, what starts the clock running, and that's what he's saying here. The other elements of his claim are the forgery. He didn't know about the forgery, the fraudulent transfers, and the clock started to run then. But that's not the test. He knew of the injury. He admits he knew of the injury. So any related elements, which really go to his RICO claim, his pattern of racketeering activity, are irrelevant. Indeed, that's very well explained in the Holas case, where the Court basically said, you don't have to know the elements of your civil RICO claim or your pattern of racketeering activity. The only thing you have to know is your injury, and that starts the clock running, not the latter. Indeed, in a way, without saying so, what Appellant's really trying to do here is resurrect the injury and pattern discovery rule that the Supreme Court rejected in Rotela. What he's saying is, you should count my time from the time I discovered the pattern, the forgeries, the transfers. But that's specifically what was rejected in Rotela. The pattern does not start a clock. It's the injury. He admits that he knew of the injury. That's his positive. It should be his positive here in this case. You know, it's much easier to – it's a lot easier throwing out a case over something like the statute of limitations when you're reasonably confident that you kind of understand what happened, and so you just are more confident. It seems very puzzling here that there's either, like, a million-dollar check or a $600,000 check. Why has this litigation gone on for years with nobody coming forward from the bank and saying, here's what you gave us? Precisely, that's why we have statute of limitations. That's why you have what? We have statute of limitations for this kind of case. So you're saying because of the passage of time, you'd lost the check by 2012? No, no. The alleged fraudulent transfers occurred in 1999 and 2000. That's what he alleges. The supposed forgeries and transfers occurred, according to the complaint, both the Finja complaint and this one, back in 1999-2000, 18 years ago. So you're saying the statute of limitations allows the bank to steal his money? Yep. He filed this claim in 2016, 16 years after the forgeries and transfers. He now wants to report. But he filed the Finja claim in 2012, so the bank is on notice. Yes, yes. His Finja claim is 2012. And you've been complaining about this prior to 2012. Well, what he's really complaining of in the Finja claim is that he deposited a million and only got back $600,000. Where's my missing $400,000? Well, let's put it like this. Before 2012, the bank did an investigation. Well, the investigations that the bank did, and it's in the record of two investigations, the records that they have before them only showed that at Popular Securities he had deposited $600,000. What happened at Finja, and it's not before the court, but if you ask, is that since the records of 1999 and 2000 were not available because it was litigated in 2013, and banks don't keep records for 13 years or for 14 years, the evidence that wasn't evidence that at the time he deposited the million dollars with Popular Securities was a transfer out for the purchase of a house for $400,000. That was evidence, the only evidence that was presented as to what happened to the other part of the million dollars. That was the only document that was presented at that hearing, and obviously the arbitrators believe that that money was used for other purposes and that the only amount left in Popular Securities' accounts was $600,000, which was what Popular Securities concluded with the documentation they had in the two investigations. But again, it is why such a limitation existed. If he had filed his claim well before, maybe all of the documents would have been available and we would be showing here how he used his other $400,000 to purchase a house, while he says no, he went to some unaccounted for bank account. So again, I would urge you to apply the injury discovery rule, the omission of the injury. I think, you know, it's dispositive of this case. He can't use the discovery of the pattern in 2013, according to him, to start the clock running because that's not the law in this circuit. All right, thank you. Thank you. No, you didn't reserve any time. Thank you to both parties.